UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br> *ex rel.* JEFFREY D'AGOSTINO, <br><br> Plaintiffs, <br><br> v. <br><br> EV3, INC., *et al.*, <br><br> Defendants. | C.A. No. 10-11822-RGS |

**UNITED STATES' STATEMENT OF INTEREST
AS TO DEFENDANTS' MOTIONS TO DISMISS RELATOR'S COMPLAINT**

The United States submits this Statement of Interest pursuant to 28 U.S.C. § 517 to respond to certain arguments that Defendants make in support of their Motions to Dismiss the Complaint. The United States remains the real party in interest in this matter, even though it has not intervened. *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004). The False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, is the United States' primary tool used to redress fraud on the government. Thus, the United States has a keen interest in the development of the law in this area and in the correct application of the law in this, and similar, cases.

The United States submits this Statement of Interest to make two points: 1) the use of a defective or unapproved device in a service reimbursed by Medicare as part of a "bundled" diagnosis-related group ("DRG") rate can give rise to a false claim under the FCA; and 2) the

First Amendment is not implicated here and poses no limitation on FCA claims arising from off-label marketing.[1]

## I. The Use Of A Defective Or Unapproved Device Can Give Rise To A False Claim Under The FCA.

Coverage under the Medicare program is limited to items or services that are "reasonable and necessary for the diagnosis or treatment of illness or injury." *See* 42 U.S.C. § 1395y(a)(1).[2] The Secretary of Health and Human Services has broad authority to determine what products and services are "reasonable and necessary." *See* 42 U.S.C. § 1395ff(f)(1)(B); *Heckler v. Ringer*, 466 U.S. 602, 617 (1984). In making that determination, the Secretary may consider, among other things, the Food and Drug Administration ("FDA") assessment of whether and under what circumstances a device is sufficiently safe and effective to be sold in the United States. Even when FDA clears or approves a device, the Secretary may still determine that a procedure using the device is not medically necessary. *See Int'l Rehab. Scis., Inc. v. Sebelius*, 688 F.3d 994, 1002-03 (9th Cir. 2012) (affirming denial of Medicare coverage for failure to demonstrate the device was "safe and effective," despite FDA clearance and the assignment of a billing code and fee schedule); *Almy v. Sebelius*, 679 F.3d 297, 301 (4th Cir. 2012) (same); *United States ex rel. Dickson v. Bristol Myers Squibb Co.*, 2013 WL 360299, at *2 (S.D. Ill. Jan. 30, 2013) ("[T]he

---

[1] The United States takes no position on the defendants' arguments seeking dismissal for failure to plead fraud with particularity under Fed. R. Civ. P. 9(b), or for failure to establish jurisdiction under Fed. R. Civ. P. 12(b)(1) due to the public disclosure bar.

[2] Similarly, TRICARE, the federal military health care plan, covers only "medically necessary services and supplies" and excludes coverage for "[u]nproven drugs, devices, and medical treatments or procedures." 32 C.F.R. §§ 199.4(a)(1)(i) & (g)(15). TRICARE defines "unproven" as lacking the necessary FDA approval, clearance, or investigational device exemption. *Id.* at § 199.4(g)(15)(i)(A)-(B). According to its provider manual, "[i]f the device is used for a noncovered indication, benefits may not be allowed." TRICARE Policy Manual Chap. 8 § 5.1, 2.2.

fact a drug is approved, does not mean it is 'reasonable and necessary' in every instance it is prescribed.").

Defendants appear to acknowledge that coverage is governed by the "reasonable and necessary" standard set forth in the Medicare statute.  *See* Defendant EV3, Inc.'s Memorandum of Law in Support of its Motion to Dismiss Relator's Third Amended Complaint (Doc. 74) ("EV3 Mot. to Dismiss") at 15; Defendant EV3, Inc. and Micro Therapeutics, Inc.'s Reply in Further Support of Their Motions to Dismiss Relator's Third Amended Complaint  (Doc. 100) ("Defts' Reply") at 11.  Yet defendants suggest that FCA liability can be established only by also showing that the "entire procedure" using a medical device was "utterly worthless."  EV3 Mot. To Dismiss at 6-7.  Defendants have improperly conflated two distinct theories of FCA liability.  On the one hand, the requirement that an item or service be reasonable and necessary is a condition of payment, and, like any condition of payment, a bill for an item or service in violation of that condition is a false claim and is ineligible for payment.  On the other hand, even if a service is reasonable and necessary, it may have been provided in such an ineffective way, or its value may have been nullified by a failure to provide other services, that it was effectively worthless and tantamount to providing no services at all.  These are two distinct theories of liability and it is not necessary to satisfy both in order to establish FCA liability.

Defendants incorrectly argue that fraud with respect to a good or service that is billed as part of a DRG cannot give rise to a false claim because the amount of reimbursement is fixed, regardless of what component goods and services are used.  *See* EV3 Mot. to Dismiss at 8-9; Defts' Reply at 5.  In essence, defendants contend that, if CMS elects to reimburse services at a bundled rate, no false claims could ever result from the use of a particular component device, regardless of whether the device was unapproved, defective, or dangerous.  That is incorrect.

The mechanics of reimbursement cannot be used to insulate a defendant from liability. *United States ex rel. Hutcheson v. Blackstone Medical, Inc.*, 647 F.3d 377, 394-95 (1st Cir. 2011) ("Blackstone's argument that Medicare would excuse these [kickback] violations because of a bureaucratic [payment] mechanism . . . impermissibly cabins what the government may consider material."); *see also United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 916 (7th Cir. 2005) ("If a false statement is integral to a causal chain leading to payment, it is irrelevant how the federal bureaucracy has apportioned the statements among layers of paperwork."). Even when reimbursement for a device is incorporated within the overall reimbursement for a surgical procedure, the Secretary retains broad discretion to assess the safety and effectiveness of both the device and the overall procedure in determining whether to cover the procedure. Thus, safety information about a medical device could be part of a set of facts stating a claim for violation of the FCA if the information would have affected the decision of a federal healthcare program to reimburse for procedures using the device. *United States ex rel. Bui v. Vascular Solutions, Inc.*, Case No. A-10-CA-883-SS2013, U.S. Dist. LEXIS 187974 (W.D. Tex. Mar. 6, 2013) (Government stated claim under the FCA based on defendant's alleged promotion of device for unapproved use); *United States ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 530 (N.D. Tex. 2012) (relator stated claim under the FCA based on defendant's alleged promotion of devices for unapproved uses).

Medicare retains the right—and is statutorily required—to deny coverage for items and services that are not reasonable and necessary, and the intentional sale of defective devices can give rise to FCA liability if the devices affect the reasonableness and medical necessity of a procedure in which they are used, whether they are billed individually or together with other goods and services. *See United States ex rel. Provuncher v. Angioscore, Inc.*, Case No. 09-

12176-RGS, 2012 U.S. Dist. LEXIS 108487, at *5 (D. Mass. Aug. 3, 2012) ("[T]he deliberate sale of batches of say, contaminated beef or nonfunctioning munition to the U.S. military" is redressable under the FCA.).

## II. The First Amendment Is Not Implicated Here And Poses No Limitation On FCA Liability.

Defendants wrongly contend that the First Amendment gave them a constitutional right knowingly to cause other parties to submit false claims to the government, as long as they did so by their speech. Contrary to defendants' suggestion, no court has ever endorsed this position. First, the FCA provides independent and distinct bases for liability for false claims and for false statements, respectively. *See* 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B). Liability under Section 3729(a)(1)(A) does not require proof that a defendant made a false statement; it requires only proof that the defendant presented or caused the presentment of a false claim. *See* 31 U.S.C. § 3729(a)(1)(A); *United States ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 733 (1st Cir. 2007) (separately analyzing false statement allegations under then-section 3729(a)(2)). Thus, there is no need in an FCA case to establish the existence of a statement, let alone a false one, to establish FCA liability. Second, because off-label promotion by a medical device company can be *evidence* that the company caused physicians or hospitals to submit false claims for services that were ineligible for reimbursement, the First Amendment is not implicated, even where the defendant's promotional message is factually true. *See Wisconsin v. Mitchell*, 508 U.S. 476, 488-89 (1993) ("The First Amendment . . . does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."); *Whitaker v. Thompson*, 353 F.3d 947 (D.C. Cir. 2004) (explaining in context of Food, Drug, and Cosmetic Act that "th[e] use of speech to infer intent, which in turn renders an otherwise permissible act unlawful, is constitutionally valid"). Nothing in *United States v. Caronia*, 703 F.3d 149, 152 (2d Cir. 2012),

is to the contrary; indeed, that court expressly stated that "we assume, without deciding, that such use of evidence of speech is permissible." *Id.* at 162 n.9. Further, *Caronia* was a criminal prosecution under the Food, Drug, and Cosmetic Act addressing the misbranding of a drug, and the submission of false claims to federal healthcare programs for products or procedures that were ineligible for reimbursement simply was not at issue in that case.

## **CONCLUSION**

As noted above, the United States of America takes no position on the defendants' motions pursuant to Fed. R. Civ. P. 9(b) or 12(b)(1). If the Court reaches the remaining arguments in the motions to dismiss, the United States respectfully requests that the Court consider the government views expressed in this Statement of Interest.

        Respectfully Submitted,

        STUART F. DELERY
        Assistant Attorney General

        CARMEN ORTIZ
        United States Attorney
        District of Massachusetts

By:   /s/ *Gregg Shapiro*
      GREGG SHAPIRO
      Assistant United States Attorney
      1 Courthouse Way, Suite 9200
      Boston, MA 02210
      (617) 748-3366
      gregg.shapiro@usdoj.gov

                        MICHAEL D. GRANSTON
                        JAMIE YAVELBERG
                        DOUGLAS ROSENTHAL
                        Attorneys, Department of Justice
                        Civil Division
                        Commercial Litigation Branch
                        P. O. Box 261
                        Benjamin Franklin Station
                        Washington, D.C.  20044
                        (202) 305-2073
                        douglas.j.rosenthal@usdoj.gov

Dated: August 29, 2014